UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NATHAN J. DAVIS,

      Plaintiff,

v.                                       Case No. 3:23-cv-753-BJD-LLL

WARDEN LANE, et al.,

      Defendants.
_____

## ORDER

### I. Status

Plaintiff, Nathan J. Davis, an inmate of the Florida Department of Corrections (FDC), is proceeding *pro se* on an Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 5; Am. Compl.) against three individuals: the Warden of Suwannee Correctional Institution (Lane); and two Sergeants (Pope-Jones and Boone). Plaintiff alleges Defendant Pope-Jones used excessive force against him on May 15, 2023, causing a "busted" lip; unspecified injuries to his knee, arm, and lower back; and a possible concussion. *See* Am. Compl. at 5–6.[1] Plaintiff implies that Defendant Boone

---

[1] Plaintiff also alleges Defendant Pope-Jones sprayed him twice with chemical agents the day before in connection with disciplinary action. *See* Am. Compl. at 5. It is unclear whether Plaintiff contends the use of chemical agents constituted excessive

was present at the time but failed to intervene: he alleges that both Defendants Boone and Pope-Jones were escorting him and other inmates when the incident occurred. *See id.* at 5–6. Plaintiff asserts no factual allegations against Defendant Lane. *See generally id.* As relief, Plaintiff seeks compensatory damages and for Defendant Pope-Jones to be terminated. *Id.* at 6–7.

Defendants jointly move to dismiss Plaintiff's Amended Complaint (Doc. 35; Def. Mot), asserting the following grounds: they are entitled to immunity as to any damages claims against them in their official capacities; Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA); Plaintiff fails to state a plausible claim against Defendants Lane and Boone; and, under the PLRA, Plaintiff is not entitled to the relief he seeks. *See* Def. Mot. at 1, 9–11. In support of their exhaustion argument, Defendants provide declarations and grievance records (Docs. 35-1, 35-2; Def. Exs. 1 & 2). Plaintiff opposes the Motion (Doc. 42) with his own exhibits (Docs. 42-1 to 42-5; Pl. Exs. 1–5).

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In

---

force under the circumstances. It appears his claims are related to, or arise out of, solely the conduct that occurred on May 15, 2023.

ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### III. Exhaustion Under the PLRA

The PLRA provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Although "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) [2] (citing *Jones*, 549 U.S. at 211). However, prisoners need not affirmatively "demonstrate exhaustion in

---

[2] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

3

their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, because failure to exhaust is an affirmative defense, the defendant bears the burden. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. *Woodford*, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with the relevant agency's deadlines and other critical procedural rules[.]" *Id.* Generally, to properly exhaust administrative remedies, a Florida prisoner must timely complete a three-step process as fully set forth in the Florida Administrative Code (FAC). *See* Fla. Admin. Code rr. 33-103.001 through 33-103.018. Except for specific, enumerated issues, a prisoner generally must initiate the grievance process at the first step by filing an informal grievance within "20 days of when the incident or action being grieved occurred." *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.011(1)(a). If an informal grievance is denied, a prisoner must proceed to the second step of the process by filing a formal grievance at the institution within 15 days from "[t]he date on which the informal grievance was responded to." *See* Fla. Admin. Code rr. 33-103.006(1), 33-103.011(1)(b). The final step of the grievance process requires a prisoner to submit an appeal to the Office of the Secretary of the FDC within 15 days "from the date the response to the formal grievance [was]

4

returned to the inmate." *See* Fla. Admin. Code rr. 33-103.007(1), 33-103.011(1)(c). Unless grieving certain matters, an inmate must follow these steps "in order and within the time limits set forth in [the FAC], and must either receive a response or wait a certain period of time before proceeding to the next step" if no response is received. *Pavao*, 679 F. App'x at 824.

When confronted with an exhaustion defense, courts in the Eleventh Circuit employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. . . . Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing *Turner*, 541 F.3d at 1082–83).

Defendants acknowledge Plaintiff filed grievances about Defendant Pope-Jones's alleged assault on May 15, 2023, but they argue he did not complete the three-step grievance process before initiating this action. *See* Def. Mot. at 6–7. A review of the relevant grievance records show that Plaintiff initiated the three-step grievance process by filing an informal grievance on

5

May 15, 2023. *See* Def. Ex. 1 at 7.[3] His informal grievance was denied, so he appealed to the Office of the Warden on May 22, 2023. *Id.* at 5, 7. The Warden's office also denied his grievance, so Plaintiff proceeded to the final step by filing an appeal with the Office of the Secretary on June 18, 2023. *Id.* at 4, 6. A representative of the Secretary's Office denied Plaintiff's appeal on July 10, 2023. *Id.* at 3. Plaintiff initiated this action before the Office of the Secretary mailed the response to him—on June 23, 2023 ("mailbox rule").

Generally, when a plaintiff initiates a civil action before receiving a response to a grievance he was required to file—or waiting the response time—he has not "properly exhausted" his administrative remedies in accordance with "applicable administrative rules." *See Woodford*, 548 U.S. at 93. Applying this general rule in consideration solely of dates and the official result of each grievance, Plaintiff initiated this action prematurely. However, a substantive review of the June 8, 2023 response to Plaintiff's formal grievance suggests he may not have had to file an appeal to the Office of the Secretary at all.

Although the Warden's office technically "denied" Plaintiff's grievance, Plaintiff was informed as follows: "[Y]our allegations have been previously documented and reported to the appropriate OIC [officer in charge], as well as

---

[3] Plaintiff relies on the same grievances, in part, in support of his argument that he exhausted his administrative remedies. *See* Pl. Ex. 1

6

the Office of the Inspector General [(OIG)]. . . . You may or may not receive an interview . . . ." *See* Def. Ex. 1 at 6; Pl. Ex. 1 at 7.[4] Plaintiff received this response before he filed his original complaint in this case. However, based on the response from the Warden's office, technically there was nothing more for Plaintiff to have done after the Warden's office told him his allegations had been reported to the OIG, regardless of the official result (*i.e.*, the grievance being "denied") or Plaintiff's subsequent grievance filings. *See, e.g.*, *Lanier v. Smith*, No. 3:08-cv-833-J-12JRK, 2009 WL 1758904, at \*1 (M.D. Fla. June 19, 2009) (denying the defendants' motion to dismiss given the plaintiff's grievance efforts resulted in his allegations being "referred to the [OIG] for review and consideration"). *See also Tierney v. Hattaway*, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at \*2 (N.D. Fla. Dec. 9, 2022) ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [OIG], it would have been pointless for [him] to appeal by filing a formal grievance."); *Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at \*11 (N.D. Fla. Feb. 17, 2016), *report and recommendation adopted sub nom.*, 2016 WL 1169481 (Mar. 22, 2016) (finding the plaintiff exhausted his administrative

---

[4] Even though Plaintiff initiated this action before receiving the formal response to his appeal, that response also indicated his allegations were already "under review by the Departmental Staff." *See* Doc. 35-1 at 3; Doc. 42-1 at 5.

remedies where he filed an informal grievance, which was "approved" from the standpoint that his allegations had been referred to the OIG).

Regardless of the official response an inmate receives to a grievance that prompts a referral to the OIG (*i.e.*, "approved," "returned," or "denied"), the Southern District has observed, "Federal district courts throughout the State of Florida have found that a prisoner exhausts his administrative remedies if he or she starts the grievance process set forth in the [FAC] *and then* has that grievance referred to the OIG." *Ham v. Salmon*, No. 20-cv-81071-RAR, 2022 WL 1555080, at *4 (S.D. Fla. May 17, 2022) (citing cases). The court reasoned as follows:

> The Court finds it illogical that two plaintiffs who alleged the same type of violations and had the same result (*i.e.*, referral to [the] OIG) would have different exhaustion outcomes *based purely on the language used in the responses they received from prison officials* [*i.e.*, "approved," "returned," or "denied"]. The exhaustion provision of the PLRA requires a plaintiff to dutifully and rigidly exhaust all available remedies before filing suit—even when "pursuing administrative procedures would be futile." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000). But the Court will not adopt such a constrained view of the PLRA where the determinative factor in satisfying exhaustion turns on the specific language used by a prison official in response to a grievance.

*Id.* at *6.

The Court finds the Southern District's reasoning particularly persuasive, keeping in mind the purpose of exhaustion: to "affor[d] corrections

officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *See Woodford*, 548 U.S. at 93 (alteration in original) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). Here, by timely filing grievances about the alleged incident involving Defendant Pope-Jones, Plaintiff afforded FDC officials an opportunity to investigate and address his complaints before seeking judicial relief. Thus, Defendants' Motion to Dismiss will be denied as to exhaustion.

## IV. Remaining Arguments

First, Defendants invoke Eleventh Amendment immunity as to any damages claims against them in their official capacities. *See* Def. Mot. at 4–5. Plaintiff opposes the Motion with respect to his claims against Defendants Pope-Jones and Boone, although his argument is unclear and suggests confusion about the law or Defendants' position. *See* Pl. Resp. at 1–2. When a plaintiff sues a state actor in his official capacity for damages, "the action is in essence one for the recovery of money from the state." *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). As such, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* (finding the Secretary of the FDC was immune from suit in his official capacity). To the extent Plaintiff seeks damages from Defendants in their official capacities,

9

they are entitled to Eleventh Amendment immunity and Defendants' Motion will be granted on this basis.

Second, Defendants argue Plaintiff fails to state a plausible claim against Defendants Lane and Boone. *See* Def. Mot. at 8. They explain that Plaintiff does not describe any unconstitutional conduct by these Defendants or otherwise articulate a plausible legal theory upon which to impose liability against them. *See id.* As to Defendant Lane, Defendants' Motion will be granted. Plaintiff asserts no factual allegations against Defendant Lane in his Amended Complaint. In his Response, Plaintiff suggests Defendant Lane was deliberately indifferent to a serious risk of harm, asserting Lane knew of Defendant Pope-Jones's proclivity for using excessive force on inmates. *See* Pl. Resp. at 3. Plaintiff may not introduce new allegations or theories of liability through his Response. *See, e.g.*, *Escutia v. Carnival Corp.*, No. 23-24230-CIV, 2024 WL 1931703, at *24 (S.D. Fla. Mar. 13, 2024), *report and recommendation adopted*, 2024 WL 3201006 (June 27, 2024) ("[The court] will not consider these new allegations [raised in the response] for purposes of evaluating a dismissal motion." (citing cases)).

Nonetheless, even had Plaintiff asserted such an allegation in his Amended Complaint—or were granted leave to amend his pleading to add this allegation—Plaintiff's claim against Defendant Lane still would fail. A prison

10

official may not be held liable under § 1983 on a theory of vicarious liability. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). *See also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior."). A claim against a supervisor arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id.*

Absent personal participation in a constitutional violation, the requisite causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *See id.*; *Cottone*, 326 F.3d at 1360. A plaintiff relying on the "history of widespread abuse" theory must demonstrate the past deprivations were "obvious, flagrant, rampant and of continued duration," such that the supervising official was on notice of the need to take corrective action. *See Crawford*, 906 F.2d at 671. "A single incident of a constitutional violation is insufficient to prove a policy or custom . . . ." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).

Plaintiff does not allege that Defendant Lane personally participated in the alleged assault by Defendant Pope-Jones, knew the assault would occur, or authorized it. Moreover, Plaintiff does not describe a single other incident of excessive force by Defendant Pope-Jones against other inmates of which Defendant Lane was aware, such that Defendant Pope-Jones's conduct could be described as "obvious, flagrant, [or] rampant." *See Crawford*, 906 F.2d at 671. An allegation of a policy or custom may not be conclusory to survive a motion to dismiss. *See Rankin v. Bd. of Regents of the Univ. Sys. of Ga.*, 732 F. App'x 779, 783 (11th Cir. 2018) (reasoning that the "claim [against the supervisor] fail[ed] because most of the allegations supporting it [were] conclusory, and to the extent some [were] based on facts, they [were] limited to [the plaintiff's] own experience"). As such, the claim against Defendant Lane will be dismissed.

However, the claim against Defendant Boone will not be dismissed at this juncture. As a *pro se* litigant, Plaintiff is entitled to the benefit of liberal construction of his pleading. Liberally construed, Plaintiff's Amended Complaint can be read to infer that Defendant Boone was present when Defendant Pope-Jones assaulted him but failed to intervene. *See* Am. Compl. at 5–6. "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held

personally liable for his nonfeasance." *Sears v. Roberts*, 922 F.3d 1199, 1205–06 (11th Cir. 2019) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). Whether Defendant Boone was in a position to have intervened is a question of fact more appropriately addressed at a later stage in the proceedings and on a more complete record.

Finally, Defendants argue Plaintiff's requested relief is unavailable in an action governed by the PLRA. *See* Def. Mot. at 1. Specifically, they contend Plaintiff may not recover compensatory damages because he sustained only *de minimis* injuries, and he may not have Defendant Pope-Jones terminated from his employment. *Id.* at 9, 11. As to the former argument, Defendants' Motion will be denied. Plaintiff alleges, and the Court must accept, that he sustained multiple injuries, including a concussion and damage to his arm that still prevents him from "rotat[ing it] properly." *See* Am. Compl. at 6. The Court declines to conclude at this juncture that these injuries, if proven, are *de minimis*. The Eleventh Circuit has observed:

> [The PLRA] was not intended to allow only those prisoner-plaintiffs with severe physical injuries to recover compensatory or punitive damages. And our circuit's Eighth Amendment case law allows a prisoner to recover for greater than *de minimis* physical injury even if it falls short of requiring professional medical attention.

*Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020) (internal citations omitted). If Plaintiff indeed suffered a concussion and can prove as much, that

13

injury alone is more than *de minimis*. *See, e.g.*, *Flanning v. Baker*, No. 5:12-cv-337-MW-CJK, 2016 WL 4703868, at *6 (N.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 4703862 (Sept. 7, 2016) ("A concussion and migraine headaches may be considered more than *de minimis* injuries.").

As to the latter argument (re termination of Defendant Pope-Jones's employment), Defendants' Motion will be granted. The PLRA "places substantial restrictions on the judicial relief that prisoners can seek . . . ." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (quoting *Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011)). For instance, district courts generally will not interfere with matters of prison administration, including employee discipline.

Accordingly, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 35) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as follows: (1) any official-capacity claims for damages are dismissed; (2) any claims against Defendant Lane are dismissed; and (3) Plaintiff's request that Defendant Pope-Jones be terminated is stricken. The Motion is otherwise **DENIED**.

2. Defendants Pope-Jones and Boone must answer the Amended Complaint (Doc. 5) within **twenty days** of the date of this Order.

3. The **Clerk** shall **terminate** Defendant Lane as a party to this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of June 2025.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c: Nathan J. Davis
Counsel of Record